# I.A.M. National Pension Fund

# TRUST AGREEMENT

EXHIBIT C  04CV0414 RMC

*Dated May 1, 1960 as amended as of January 1, 1997*
*(including amendments through October 31, 2001)*

# AMENDED AND RESTATED
# TRUST AGREEMENT

### For the

# I.A.M. National Pension Fund

THIS AMENDED AND RESTATED Trust Agreement is made and entered into as of January 1, 1997 in the City of Washington, District of Columbia, among the Trustees of the I.A.M. National Pension Fund.

## WITNESSETH:

WHEREAS, there has previously been entered into a Trust Agreement establishing the I.A.M. National Pension Fund which has been amended from time to time.

WHEREAS, various Employers have entered into or expect to enter into collective bargaining agreements with the International Association of Machinists and Aerospace Workers, AFL-CIO ("I.A.M." or "International Union"), or with affiliated Local or District Lodges, which provide, among other things, for the establishment and continuation of the I.A.M. National Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund.

WHEREAS, the sums payable to the fund are for the purposes of providing retirement and related benefits as now or may be hereafter authorized or permitted by law for eligible employees and their beneficiaries.

WHEREAS, it is desired to amend further and restate the terms and conditions under which the Fund is to be continued and administered.

WHEREAS, the Trustees have the power and authority to amend and restate the Trust Agreement establishing the I.A.M. National Pension Fund.

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained, it is mutually understood and agreed as follows:

## ARTICLE I

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1.* EMPLOYER. The term "Employer" as used herein shall mean any Employer (including employer associations) who now or hereafter has a Collective Bargaining Agreement with a Local or District Lodge of the I.A.M. or with the I.A.M., or has another written agreement, requiring periodic contributions to the Pension Fund continued by this Restated Trust Agreement, and who adopts and agrees to be bound by the terms and provisions of this Agreement and any amendments and modifications thereof, and who is accepted as an Employer by the Trustees.

The term "Employer" also shall include the Trust Fund with respect to one or more classes of Fund employees designated in writing by the Trustees.

The term "Employer" also may include the I.A.M. and such Local and District Lodges of the I.A.M., I.A.M. Welfare Funds, and Conjoint Unions as are accepted by the Trustees for participation in this Fund. Provided, however, that the foregoing references to the I.A.M. and its Local and District Lodges, as well as to Conjoint Unions, as an "Employer" shall not be deemed to convey on such organizations any rights or privileges granted by this Agreement to Employers.

The Trustees shall have the discretion and authority to adopt rules and procedures for the acceptance, participation, and termination of Employers as they deem appropriate.

*Section 2.* EMPLOYEES.

(a) The term "Employees" as sued herein means all persons within bargaining units represented by a Local or District Lodge of the I.A.M., or by the I.A.M., who are employed by Employers, and who are covered by this Pension Fund pursuant to a Collective Bargaining Agreement.

1

(b) The term "Employees" also may include employees of the Trust Fund and employees of the I.A.M. and such Local or District Lodges of the I.A.M., I.A.M. Welfare Fund, or Conjoint Union, as are accepted by the Trustees as Employers. The term "Employees" shall include present or former employees of an Employer on whose behalf contributions are payable pursuant to the Regional Rail Organization Act of 1973 or other applicable law.

(c) The term "Employees" may also include such other class or classes of employees who are not within the bargaining unit represented by Local or District Lodges of the I.A.M., or the I.A.M., but who are employed by an Employer required by a written agreement to make contributions on their behalf, provided that the acceptance and continued participation of such class or classes complies with the minimum coverage and nondiscrimination requirements of the Internal Revenue Code and in each case is subject to actuarial evaluation by the Trustees, whose decision with regard to their acceptance or rejection shall be final.

(d) The term "Employees" shall not include self employed persons, partners, or sole proprietors of a business organization which is an Employer.

(e) The Trustees shall have the discretion and authority to adopt rules and procedures for the coverage of Employees as they deem appropriate.

*Section 3.* I.A.M. OR INTERNATIONAL UNION. The term "I.A.M." or "International Union," as used herein, shall mean the International Association of Machinists and Aerospace Workers, AFL-CIO.

*Section 4.* LOCAL AND DISTRICT LODGES. The term "Local or District Ledges," as used herein, shall mean any Local or District Lodge affiliated with the I.A.M. or chartered by the I.A.M. which is accepted by the Trustees as a party to this Restated Trust Agreement. Any other union may be treated as a Local or District Lodge hereunder if accepted by the Trustees.

*Section 5.* I.A.M. WELFARE FUND AND CONJOINT UNION. The term "I.A.M. Welfare Fund," as used herein, shall mean any trust fund established pursuant to a labor agreement with a Local or District Lodge of the I.A.M., or the I.A.M., which provides welfare benefits under a written plan to eligible employees, their families, and dependents and which is administered jointly by representatives of the employees and employers; provided that such trust fund first becomes a party to this Restated Trust Agreement in the form and manner described by the Trustees. The term "Conjoint Union," as used herein, shall mean a labor organization which represents different Employees of an Employer than those represented by the I.A.M. of a Local or District Lodge.

*Section 6.* TRUSTEES.

(a) The term "Employer Trustees" as used herein shall mean the persons who were actively employed or retained by an Employer at the time of their appointment and who are serving as Trustees pursuant to Article III hereof.

(b) The terms "I.A.M. Trustees" or "Union Trustees" as used herein shall mean the persons employed by the I.A.M. or Local and District Lodges who are serving as Trustees pursuant to Article III hereof.

(c) The term "Trustees" as used herein shall mean the Employer Trustees and Union Trustees collectively.

*Section 7.* RESTATED TRUST AGREEMENT. The term "Restated Trust Agreement" or "Restated Agreement and Declaration of Trust" or "Amended and Restated Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof.

*Section 8.* PLAN. The term "Plan" or "Plans" as used herein shall mean the program or programs of pensions benefits established by the Trustees pursuant to this Restated Trust Agreement. This term shall include the National Pension Plan, the I.A.M. National 401(k) Plan, and any other plan of benefits the Trustees may adopt or have adopted from time to time.

*Section 9.* FUND. The term "Fund" or "Trust Fund" as used herein shall mean the I.A.M. National Pension Fund as set forth in Article II.

*Section 10.* CONTRIBUTIONS. The term "Contributions" as used herein shall mean the contributions made directly by Employers to the Fund and contributions made by Employers of deferred wages or compensation of Employees under a cash or deferred arrangement.

*Section 11.* BENEFITS. The term "Benefits" as used herein shall mean the pension benefits to be provided pursuant to the Plan or Plans.

*Section 12.* COLLECTIVE BARGAINING AGREEMENT. The term "Collective Bargaining Agreement" as used herein shall mean any labor contract between an I.A.M. Local Lodge or District Lodge, or the I.A.M. itself, and an Employer, which provides for Employer contribution to be made to this Trust Fund in a manner acceptable to the Trustees.

## ARTICLE II
## GENERAL

*Section 1.* CONTINUATION OF FUND. As hereby continued, the I.A.M. National Pension Fund shall comprise all assets of the Plan or Plans including without limitation Contributions made to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received by the Trustees as Contributions or as income from investments made and held by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Restated Trust Agreement.

*Section 2.* GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for the exclusive purpose of providing pension benefits to Employees and their beneficiaries under the terms of the Plan or Plans, as determined by the Trustees, and shall further provide the means for financing the reasonable expenses of the Trustees and of the operation and administration of the Fund, in accordance with this Restated Trust Agreement and applicable law. The Plans maintained by the Trust shall be multiemployer pension plans within the meaning of Section 3(2) and (37) of the Employee Retirement Income Security Act of 1974 ("ERISA").

*Section 3.* IRREVOCABLE PURPOSE. The Trust continued hereby shall constitute an irrevocable trust established for the exclusive benefit of Employees, in accordance with Section 302(c)(5) of the Labor Management Relations Act of 1947, as amended, and in accordance with the Employee Retirement Income Security Act, as amended.

## ARTICLE III
## TRUSTEES

*Section 1.* UNION AND EMPLOYER TRUSTEES. The operation and administration of the Plan or Plans and the Trust Fund shall be the exclusive responsibility of the Union Trustees and Employer Trustees acting jointly with the exception of those responsibilities delegated to investment managers pursuant to Article IV hereunder. There shall be an equal number of Union Trustees and Employer Trustees.

*Section 2.* ACCEPTANCE OF TRUSTEESHIP. Each of the undersigned Trustees hereby agrees to continue his acceptance of the trusteeship hereunder and agrees to act as Trustee strictly in accordance with the provisions of this Restated Trust Agreement. Each future Trustee must also agree in writing to accept the trusteeship hereunder and must agree to act as a Trustee strictly in accordance with the provisions of this Restated Trust Agreement.

*Section 3.* TERM OF TRUSTEES. Each Trustee, and each future Trustee, shall serve as Trustee until death, incapacity, resignation, removal, or inability to serve. Any Employer Trustee may be removed in writing by a majority of the remaining Employer Trustees. An Employer Trustee will be automatically removed on the one year anniversary of the date he ceases to be actively employed or retained by an Employer, but he shall continue to serve until his successor is designated by the remaining Employer Trustees. Any Union Trustee may be removed in writing by the I.A.M. Removal of a Trustee shall be effective upon receipt by the Trustees of a statement in writing from the I.A.M. or of a statement in writing from the other Employer Trustees, as the case may be. Any retiring or terminating Trustee will promptly turn over to the remaining Trustees at the office of the Fund any any all records, books, documents, monies, and other property in his possession which are a part of the Trust Fund or related to the fulfillment of the Trustees' duties and responsibilities under this Restated Trust Agreement.

*Section 4.* FUTURE TRUSTEES. The successor to any Union Trustee shall be designated in writing by the I.A.M. and filed with the Trustees. The successor to any Employer Trustee shall be designated in writing by the Employer Trustees then remaining in office and filed with the Trustees. Any future Trustee shall, upon his designation as Trustee and the filing of his written acceptance with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as of originally named as a Trustee. The Trustees then in office and other necessary persons shall be notified of the appointment of a successor Trustee. The powers of the Trustees to act will not be impaired or limited in any way pending the designation of a successor Trustee to fill any vacancy.

## ARTICLE IV
## POWERS, DUTIES, AND OBLIGATIONS OF TRUSTEES

*Section 1.* FIDUCIARY DUTIES. Each Trustee shall discharge his duties with respect to the benefit Plans and this Trust with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The Trustees shall diversify the investments of the benefit Plans. Each Trustee shall use reasonable care to prevent a co-trustee from committing a breach of fiduciary duty. The Trustees are the "Named Fiduciary" and the "Administrator" of the Fund as those terms are defined in ERISA.

3

*Section* 2. FUNDING POLICY. In order to establish and carry out a funding policy and method consistent with the objective of the Plan and the requirements of ERISA, the Trustees shall engage the services of an actuary enrolled by the Joint Board for Enrollment of Actuaries and shall adopt a policy upon consideration of his recommendations, which policy shall be reviewed at least annually by the Trustees.

*Section* 3. CONDUCT OF TRUST BUSINESS. The Trustees have the authority to control and manage the operation and administration of the Fund and will conduct the business and activities of the Fund in accordance with this Restate Trust Agreement and applicable law. The Trustees shall hold, manage, and protect the Fund and collect the income therefrom and contributions thereto.

*Section* 4. DESIGNATION OF FUND DIRECTOR. The Trustees may appoint one or more Fund Directors to carry out such administrative responsibilities as the Trustees may instruct.

*Section* 5. ALLOCATION OF TRUSTEES' RESPONSIBILITIES. The Trustees may allocate fiduciary responsibilities among the Trustees, or to committees of the Trustees, and they may delegate fiduciary duties to persons other than the Trustees and delegate Trustee responsibilities to investment managers as provided in this Restated Trust Agreement and in accordance with the requirements of ERISA.

*Section* 6. USE OF THE TRUST FUND FOR EXPENSES AND TO PROVIDE BENEFITS.

(a) The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the payment of all reasonable and necessary expenses.

(i)   of collecting contributions and payments and other monies and property to which the Fund may be entitled;

(ii)  of administering the affairs of the Fund including the purchase or lease of premises, materials, supplies and equipment;

(iii) of obtaining such legal, actuarial, consulting, investment, administrative, accounting, clerical, and other services as they deem necessary or appropriate; and

(iv)  of performing such other acts as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

(b) The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the [payment of Benefits to eligible Employees and their beneficiaries in accordance with the terms, provisions, and conditions of the Plan or Plans adopted by the Trustees pursuant to this Restated Trust Agreement.

*Section* 7. CONSTRUCTION OF AGREEMENT. The Trustees have the full and exclusive discretionary authority to determine all questions of coverage and eligibility, methods of providing benefits and all other related matters. The Trustees have full discretionary power to interpret the provisions of this Restated Agreement and Declaration of Trust, as well as the provisions of any Plan or Plans of Benefits and any rules, regulations, or procedures created pursuant to this Restated Trust Agreement. The terms used herein and any construction or interpretation adopted by the Trustees in the exercise of this discretionary authority shall be binding upon the International Union, the Local and District Lodges, the Employers and the Employees and their families, dependents, beneficiaries and legal representatives.

*Section* 8. GENERAL POWERS. The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) To establish, interpret, and administer a Pension Plan or Plans on behalf of the Employees and their beneficiaries.

(b) To enter into any and all contracts and agreements for carrying out the terms of this Restated Trust Agreement and for the administration of the Trust Fund and do all acts as they in their discretion may deem necessary and advisable.

(c) To commence or defend any legal, equitable, or administrative proceedings in connection with the Fund and represent the Fund in such proceedings; to compromise, settle, arbitrate, and release claims or demands in favor of or against the Trust Fund or the Trustees on such terms and conditions as the Trustees in their discretion may deem advisable.

(d) To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purposes of the Trust Fund.

(e) To pay out of the Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof.

4

(f) To pay or provide for the payment of all reasonable expenses of administering this Trust, the fund and the Plan or Plans of Benefits and to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan, Fund, or Trust.

(g) To demand, collect, receive, and hold contributions or payments from any source whatsoever to the extent permitted by law, to take any action the Trustees find necessary or desirable to collect contributions or payments due to the fund, to pay or provide for the payment of all reasonable and necessary expenses of collecting contributions and payments.

(h) To invest, reinvest or have invested and reinvested the assets of the Pension Fund in any type of investment, without distinction between principal and interest, and to take any and all action with respect to holding, buying, selling, lending or maintaining such investments as the Trustees, in their sole discretion, may deem appropriate. The Trustees have the authority, with respect to any stocks, bonds, or other real or personal property to exercise all the rights, powers, and privileges which might be lawfully exercised by a person owning similar property in his sole right.

(i) To register securities or other Trust Fund property in the name of the Trust Fund or of the Trustees, or, in the names of one or more nominees of the Trustees; to hold instruments in bearer form.

(j) To retain such portion of the assets of the Fund in cash or cash equivalent as the Trustees may determine to be desirable.

(k) With respect to the purchase, sale, and management by the Fund of real property, the Trustees may hold real property located within the United States in the name of the I.A.M. National Pension Fund, or in a separate trust in the name of two or more of the Trustees without disclosing the ownership of the I.A.M. National Pension Fund. Title to real estate assets may also be held by limited liability companies, Internal Revenue Code Section 501(c)(2) or Section 501(c)(25) title holding companies, or any other limited liability vehicle. The Trustees shall have full powers of control and supervision with respect to real property assets, including without limiting the generality of the foregoing, the power to lease, mortgage, grant, convey, bargain, and sell or otherwise encumber or alienate the whole or any part of the same, for such consideration and on such terms as the Trustees shall deem proper, and the Trustees may execute, acknowledge and deliver any all instruments necessary or desirable in connection therewith.

(l) In their discretion, to appoint one or more investment managers, as defined in ERISA, and enter into agreements with such investment managers, in accordance with the requirements of ERISA, delegating to the investment manager the responsibility to control and manage, acquire, and dispose of all or a portion of the assets of the Trust Fund as the Trustees may specify.

(m) In their discretion, to employ a qualified investment consultant to assist the Trustees in exercising their investment powers and authority by reviewing the investment performance, the investment policy, and the types and kinds of investments made by the Trustees and/or investment managers.

(n) In their discretion and to the extent they deem it wise, beneficial or desirable, to appoint on e or more banks or trust companies as corporate trustee which shall be an investment manager within the meaning of ERISA, to invest and reinvest those assets of the Fund which shall be transferred by the Trustees from time to time. The Trustees may from time to time enter into a trust agreement with each such corporate trustee upon such terms and conditions as the Trustees shall determine without limit with respect to the powers which the Trustees may grant to any such corporate trustee to the fullest extent permitted by law, including provision for the investment by the corporate trustee of Fund assets through the medium of a trust fund created and maintained by the corporate trustee for the collective investment of funds or trusts for employee benefit plans qualified under Section 401(a) of the Internal Revenue Code of 1954 (or corresponding provisions of any subsequent Federal revenue law in effect at the time) and provision for investment i any other type of investment without regard to any restrictions imposed by law upon investments by fiduciaries.

(o) In their discretion to purchase or otherwise acquire and to retain for such period of time as they deem wise the securities of investment companies registered under the Investment Company Act of 1940 in such amounts as the Trustees may determine from time to time.

(p) In their discretion and to the extent they deem it wise, beneficial, or desirable, to enter into a contract or contracts with an insurance company or companies to which deposits may be made from time to time and from which benefits may be paid from time to time, all on such terms and conditions as may be agreed upon between the Trustees and the insurance company issuing such contract. The Trustees may, but need not, designate or appoint the insurance company issuing such contract as an Investment Manager within the meaning of ERISA.

(q) In their discretion, to enter into and terminate agency or custody agreements with banks or trusts companies chosen by them, under which agreements the Trustees may turn over to such banks or trust companies all or a portion of the funds held by them in the Fund for safekeeping, investment or reinvestment, on such terms as the Trustees determine to be advisable.

5

(r) In their discretion and to the extent they deem it wise, beneficial, or necessary to enter into a contract or contracts with one or more persons or organizations registered as an investment adviser under the Investment Advisers Act of 1940 for the purposes of allocating the Trustees' responsibility to invest and reinvest those assets of the Trust Fund which shall be specified by the Trustees from time to time. The Trustees may, but need not, appoint any such investment adviser as an Investment Manager within the meaning of ERISA.

(s) In their discretion and to the extent they deem it wise, beneficial, or desirable, to appoint a bank or trust company as master trustee and to enter into a trust agreement allocating to such master trustee the exclusive responsibility for the custody and control of those assets of the Fund which shall be transferred by the Trustees from time to time. The Trustees may from time to time enter into a trust agreement with such master trustee upon such terms and conditions as the Trustees shall determine, including provisions that the master trustee shall follow the directions of one or more Investment Managers appointed by the Trustees pursuant to the preceding subparagraphs. Without limit with respect to the powers which the Trustees may grant to such master trustee, the trust agreement may provide for the investment by the master trustee of the plan assets through the medium of a trust fund created and maintained by the master trustee as trustee for the collective investment of funds or trusts for employee benefit plans qualified under Section 401(a) of the Internal Revenue Code of 1954 (or corresponding provisions of any subsequent Federal revenue law in effect at the time).

(t) In their discretion, to invest the assets of the Fund in a common, collective, or commingled trust fund, to the extend permitted by ERISA or other applicable law. To the extend monies or other assets are transferred to a collective trust in exchange for an interest in the collective trust, the form and conditions of the collective trust alone will govern the investment duties, responsibilities, and powers of the Trustees of the collective trust; and to the extent required by law, those terms, responsibilities, and powers will be incorporated herein by reference and will be a part of this Restated Trust Agreement.

(u) To engage independent certified public accountants, enrolled actuaries and qualified legal counsel to perform all services as may be required by applicable law and such other services as the Trustees may determine to be appropriate.

(v) To pay or provide for the payment from the Trust Fund of all costs incurred in obtaining the services of professionals, consultants, managers, and other providers of services to the to the Fund as the Trustees determined to be appropriate.

(w) To designate an agent for service of legal process.

(x) To obtain policies of insurance, to the extent permitted by law, to insure the Trustees, the Trust Fund, employees and agents of the Trustees and of the Trust Fund while engaged in business and related activities for an on behalf of the Trust Fund with respect to liability as a result of facts, errors, or omissions of the Trustees, employees, or agents, and with respect to injuries or property damage. The cost of the premiums for such policies of insurance will be paid out of the Trust Fund to the extent permitted by ERISA.

(y) To enter into an agreement or arrangement with other similar trust funds for the operation of a joint administrative office which shall administer the office or offices of the Trust Fund, coordinate and administer the accounting, bookkeeping, and clerical services, provide for the coordination of actuarial service furnished by the consulting actuary, prepare (in cooperation with appropriate consulting actuary and independent auditor) all reports and other documents to be prepared, filed, or distributed by the Fund in accordance with law, assist in the collection of amounts due to the Fund and perform such other duties and furnish other services as may be assigned, delegated, or directed or as may be contracted by or on behalf of the Trustees.

(z) To exercise their discretionary authority to make all determinations concerning matters of benefit coverage and eligibility, type, amount, and duration;

(aa) To establish such procedures, rules, and regulations which they deem appropriate to effectuate the purposes of this Restated Agreement and Declaration of Trust and not inconsistent with the terms hereof; and

(bb) To do any and all acts, whether or not expressly authorized herein, which the Trustee may deem appropriate to accomplish the general objectives and purposes of this Restated Trust Agreement.

*Section 9.* COMPENSATION. The Trustees shall not receive compensation for the performance of their duties, but may be reimbursed in accordance with ERISA for all reasonable and necessary expenses which they incur in the performance of their duties.

*Section 10.* AUTHORITY TO ENTER INTO MERGER AGREEMENTS WITH OTHER TRUSTEES. The Trustees have the authority to enter into agreements with trustees of other pension funds to permit such other pension funds to join or merge with this Fund or to transfer Fund assets to such other pension funds or to accept a transfer of assets from such other pension fund in accordance with the provisions of ERISA.

6

*Section 11.* PERSONAL LIABILITY. Neither the Trustees nor any individual or successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder; provided, however, that nothing herein shall exempt or relieve a Trustee from liability or responsibility for the breach of any responsibility, obligation, or duty imposed upon fiduciaries by ERISA, or entitle such Trustee to indemnification by the Fund for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties so long as they act in good faith and in accordance with responsibilities, obligations, and duties imposed upon fiduciaries by ERISA; nor shall any Trustee be personally liable for the breach of fiduciary responsibility of another Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees, unless:

(a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(b) by his failure to comply with Section 404(a)(1) of ERISA in the administration of his specific responsibilities which give rise to his status as a Trustee, he has enabled such other fiduciary to commit a breach;

(c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach; or

(d) he has not taken reasonable care to prevent a co-trustee from committing a breach.

The Trustees shall be fully protected in acting upon any instrument, certificate, or paper reasonably believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained, unless under the circumstances it is clearly prudent not to do so.

Neither the Employers, nor the Local or District Lodges of the International Association of Machinists and Aerospace Workers, or the I.A.M., shall in any way be liable in any respect for any of the acts, omissions, or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel, actuary, and any other professional advisors. To the extent permitted by ERISA, the Trustees will be protected in acting upon the advice of such professionals.

*Section 12.* BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all transactions of the Trust Fund which will be open to the inspection of each of the Trustees at all times and which shall be audited annually, or more often if the Trustees so decide, by a certified public accountant selected by the Trustees. A copy of such audit shall be available at all times upon reasonable notice for inspection by interested persons at the principal office of the Fund.

*Section 13.* EXECUTION OF DOCUMENTS. The Trustees may authorize an employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to jointly execute any notice or other instrument in writing and all persons, partnerships, corporations, or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Fund and the Trustees.

*Section 14.* DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. Except as hereinafter provided, no check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee.

The Employer Trustees shall designate in writing the name or names of any Employer Trustees who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustees who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

*Section 15.* SURETY BONDS. The Trustees and every person who handles funds or other property hereunder shall be bonded so as to provide protection to the Fund against loss by reason of acts of fraud or dishonesty on the part of any Trustee or such person, directly or through connivance with others, all as required by Section 412 of ERISA. The cost of the premiums of such bonds will be paid out of the Trust Fund.

7

# ARTICLE V
## CONTRIBUTIONS TO THE FUND

*Section 1.* RATE OF CONTRIBUTIONS.

(a) In order to effectuate the purpose hereof, each Employer shall contribute to the fund the amount required by the Collective Bargaining Agreement between the Local or District Lodge of the International Association of Machinists and Aerospace Workers, or the I.A.M., and the Employer and by any other agreement or law requiring contributions to the Fund with respect to Employees described in Sections 2(b) and 2(c) of Article I. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect and by any other such agreement or to the extent that such contribution rate is consistent with the rules adopted by the Trustees and this Restated Trust Agreements.

(b) In order to effectuate the purposes hereof, each Employer shall forward to the Fund amounts of deferred wages or compensation as authorized by the Employee under a cash or deferred arrangement as required by the Collective Bargaining Agreement between the Local or District Lodge of the International Association of Machinists and Aerospace Workers, or the I.A.M., and the Employer or by other agreement or law requiring the transmittal of such Contributions.

*Section 2.* EFFECTIVE DATE OF CONTRIBUTIONS. All contribution shall be made effective as required by the Collective Bargaining Agreement and by any other agreement or law and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Local or District Lodge of the International Association of Machinists and Aerospace Workers, or the I.A.M., or until it ceases to be an employer within the meaning of this Restated Trust Agreement as hereinafter provided.

*Section 3.* MODE OF PAYMENT AND REPORT ON CONTRIBUTIONS. All contributions shall be payable to the I.A.M. National Pension Fund and shall be paid in the manner and form determined by the Trustees. The employers shall make all reports on contributions required by the Trustees in the performance of their duties under this Restated Agreement and Declaration of Trust. The Trustees may, by their representatives, examine the pertinent records of each Employer whenever such examination is deemed necessary or advisable by the Trustees in connection with the administration of the Trust. The Trustees may, at any time, designate a certified public accountant to conduct an audit of the pertinent payroll and wage records of any Employer to determine whether such Employer is making all required contributions. The Trustees may charge the Employer with the cost of the audit if the results of the audit reveal underreporting in an amount that is greater than 10% of the amount actually paid during the period covered by the audit. In the event the audit shows an underreporting of contributions, the employer shall pay liquidated damages of 20% on the underreported contributions plus interest at the rate of 18% per year from thirty (30) days after written notice of the underreported contributions is sent to the Employer if payment in full is not made within that thirty (30) day period. Notwithstanding the foregoing, if the audit shows an underreporting of Contributions attributable to deferred wages or compensation under a cash or deferred arrangement, the Employer must also pay lost earnings and restore lost profits from the date Contributions were originally due through date of payment.

*Section 4.* DEFAULT IN PAYMENT. Each Employer shall be obligated to make Contributions when due. Failure of an Employer to make Contributions when due shall not relieve any other Employer of its obligation to make payments to the Fund.

Insofar as the payment of the Contributions by the individual Employer is concerned, time is of the essence. Regular and prompt payment by the Employers of the amounts due is essential for the maintenance of the Fund, and it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and to the pension programs provided by the Fund, which will result from the failure of an individual Employer to make payments in full within the required time period.

Payment of direct Employer Contributions, together with the completed reporting forms, are due on the twentieth day following the end of each calendar month. If the Employer fails to make such Employer Contributions within thirty (30) days after the date of the delinquency, the Employer shall be liable for liquidated damages of twenty percent (20%) of the amount due and simple interest shall be paid on all amounts due at the rate of eighteen percent (18%) per annum from the date of the delinquency until the date payment is received.

Notwithstanding the preceding paragraph, Contributions that are attributable to deferred wages or compensation under a cash or deferred arrangement must be paid by the Employer as soon as they can be reasonably segregated from the general assets of the Employer but in no event later than the tenth (10th) day of the month following the month during which the Contributions were withheld from the wages or compensation of the Employees. Failure by the Employer to transmit such Contributions before the tenth day of the month following the month during which such Contributions were withheld from the wages or compensation of the Employees shall make the Employer liable for liquidated damages of twenty percent (20%) of the amount due and simple interest shall be paid on all amounts due at the rate of eighteen percent (18%) per annum from the date of the delinquency until the date payment is received. If the Employer retains such Contributions beyond the tenth (10th) day of the month following the month in which the Contributions were withheld from the wages or compensation of the

8

Employees, the Employer must also pay lost earnings and restore lost profits form the date Contributions were originally due through date of payment. The Trustees may from time to time change the applicable percentages for liquidated damages and interest, but on a uniform basis for all employers.

The Trustees shall have the power to take any actions necessary to enforce the payment of Contributions, liquidated damages, interest, and other amounts due, including but not limited to, the institution of or intervention in any legal, equitable, or administrative proceedings, and all reasonable expenses incurred by the Fund in enforcing the payment of Contributions, liquidated damages, interest, or other amounts due, including, but not limited to reasonable attorneys' fees, accountants' fees, and court costs, shall be added to the obligation of the defaulting Employer in addition to the amount due. The employer agrees that such sums, together with liquidated damages and interest set forth above, shall be included in any judgment issued by a court. The Trustees shall have the authority to settle or compromise any claims, suits, or legal actions for less than the full amount due when in their discretion, they deem it in the best interests of the Fund.

The Trustees may adopt such additional rules and regulations to enforce the collection of delinquent Contributions and other amounts due as they may deem necessary, including the adoption of special rules applicable to Employers who are repeatedly delinquent.

*Section 5.* CONTRIBUTIONS HELD IN TRUST. The Trustees shall receive and hold the contributions herein provided for any other money, income, rebate, dividend, or return of premium or property which may be entrusted to them, as Trustees hereunder, with the powers and duties and for the uses, purposes, and trusts set forth in this Restated Agreement and Declaration of Trust.

Neither the Union, the Employers, Employees, or their beneficiaries shall have any right, title, or interest in or to the Trust Fund or any part thereof except as required by law.

*Section 6.* ENCUMBRANCE OF BENEFITS. The I.A.M. National Pension Fund shall constitute an irrevocable trust for the sole and exclusive benefit of Employees and their beneficiaries entitled to benefits under the Plan or Plans of Pension Benefits. All the benefits, monies, or property shall be free from the interference and control of any creditor; and no benefit shall be subject to any assignment or other anticipation, nor to seizure or to sale under any legal, equitable, or any other process, except to the extent permitted by applicable law. In the event that, because of any debt incurred by or resulting from any other claim or liability against any Employee or beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipations, or other dispositions made or attempted by said Employee or beneficiary or by reason of any seizure or sale or attempted sale under any legal, equitable, or other process or in any suit or proceeding, any claim or benefit shall become payable, or be liable to become payable to any person other than the Employee or beneficiary for whom intended, the Trustees shall have power to withhold payment of such benefit to such Employee or beneficiary until such assignment, transfer, encumbrance, anticipation or other disposition, writ or legal process is canceled or withdrawn in such manner as shall be satisfactory to the Trustees. Until so canceled or withdrawn, the Trustees shall have the right to use and apply the benefit as the Trustees may deem best, directly for support and maintenance of such Employee or beneficiary.

Contributions paid into this Pension Trust Fund shall not constitute or be deemed wages due to Employees, nor shall the Pension Fund be liable for or subject to the debts, contracts, or liabilities of the I.A.M. or its affiliated Local District Lodges, Employers, Employees, or beneficiaries. The preceding sentence, however, shall not be construed to preclude the acceptance of Contributions attributable to deferred wages or compensation under a cash or deferred arrangement.

No Employee shall have the right to receive any part of the contributions made to this Pension Trust Fund, except as provided by the Plan of Pension Benefits.

# ARTICLE VI
# PLAN OF BENEFITS

*Section 1.* BENEFITS. The Trustees shall have full discretion and authority to adopt and interpret a Plan or Plans of Pension "Benefits which sets forth eligibility requirements, type, amount, and duration of benefits to eligible Employees or their beneficiaries based on what the Trustees in their full discretion determine to be within the financial limitations of the Pension Trust Fund: provided, however, that no benefits, other than pension, annuity, death, severance, and related benefits, may be provided for or paid under this Agreement.

*Section 2.* RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any Employees of a contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Local or District Lodge, or the I.A.M. or other class of employees defined in Article I, Section 2(b) or (c), or their beneficiaries.

*Section 3.* ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full discretion and the sole and absolute authority to determine eligibility requirements for benefits and duration of benefits; to adopt and interpret rules and regulations setting forth the same; and to determine questions of eligibility. Such requirements, rules, regulations,

9

determinations, and interpretations, shall be binding on the Employees, Employees, their beneficiaries, dependents and any other person making claims. In addition, the decisions of the Trustees with respect to any exercise of this discretion shall be made in good faith and shall be final and binding on the Employers, Employees, their beneficiaries, dependents, and any other person making claims.

*Section 4.* METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.* WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

*Section 6.* QUALIFICATION OF PLAN. Each Plan adopted by the Trustees shall be such as will qualify under Section 401(a) of the Internal Revenue Code of 1954 and will continue as a qualified Plan, so as to insure that the employer contributions to the Pension Fund are proper deductions for Federal income tax purposes. The Trustees are authorized to make whatever applications are necessary to the Secretary of the Treasury to obtain a determination of the qualification of the Pension Plan.

*Section 7.* LIMIT OF EMPLOYER LIABILITY. The financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Local or District Lodge, or the I.A.M., and by any other agreement, except as otherwise provided by ERISA and any other applicable law.

## ARTICLE VII
## LIABILITY OF WITHDRAWING EMPLOYERS

*Section 1.* In general, if a Contributing Employer withdraws from a Plan in a complete or partial withdrawal on or after April 29, 1980, withdrawal liability is established by Subtitle E, Part 1 of ERISA which was added by §104 of the Multiemployer Pension Plan Amendments Act of 1980, enacted September 26, 1980 (P.L. 96-234). The provisions of Subtitle E of ERISA shall be applicable, except to the extent explicitly modified by the Trustees pursuant to powers vested in them by ERISA or be applicable regulations.

*Section 2.* The "presumptive" method, as prescribed in §4211(b) of ERISA, shall be applicable in determining an Employer's proportionate share of the unamortized amounts of a Plan's unfunded vested benefits. For withdrawals on or after the initial Plan year following the merger of Plan A and Plan B on January 1, 1991 to form the National Pension Plan, the presumptive method shall be applied in accordance with PBGC Regulations Section 2642.22.

*Section 3.* The reduction in an Employer's proportionate share under the statutory "de minimus" rule in §4209(a) of ERISA shall be $50,000 which sum is in turn reduced by the amount, if any, by which the unfunded vested benefits allocable to the withdrawing Employer, determined without regard to §4209(a) of ERISA, exceeds $100,000. In the event of a withdrawal on or after January 1, 1985, the amount of the unfunded vested benefits allocable to the withdrawing employer shall be reduced by the smaller of $50,000 or 3/4 of one percent (.0075) of the Plan's unfunded vested obligations determined as of December 31 of the year preceding the date of withdrawal.

*Section 4.* Withdrawal liability shall be determined by each Plan on the basis of actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the Plan and reasonable expectations) and which, in combination, offer the Plan actuary's best estimate of anticipated experience under the Plan as provided in §4213(a) of ERISA.

*Section 5.* For complete Employer withdrawals which occur in Plan Years ending after April 28, 1980, the amount of each annual payment required of an Employer shall be the product of (A) the average annual number of contribution base units for the period of three (3) consecutive Plan Years, during the period of ten (10) consecutive Plan Years ending before the Plan Year in which the withdrawal occurs, in which the number of contribution base units for which the Employer had an obligation to contribute under a Plan is the highest, and (B) the highest Contribution Rate at which the Employer had an obligation to contribute under the ten (10) Plan years ending with the Plan Year in which the withdrawal occurs. In the foregoing sentence, the period of ten (10) consecutive Plan Years shall be reduced to "five (5)" for withdrawals in the Plan Year ending after April 28, 1980, and the number of "five (5)" shall be increased by one for each Plan Year thereafter to a maximum of "ten (10)" in the Plan Year which ends after April 28, 1985.

*Section 6.* For certain withdrawals under Prior Plans A and B, the following applied:

(a) Under Prior Plan A, in the event the actuary determined that as of December 31st of any year, the unfunded present value of vested benefits for withdrawal liability purposes was zero, then the following became zero:

(i) the unamortized amount of the change in Prior Plan A's unfunded vested benefits for all prior years;

10

(ii) the unamortized amount of Prior Plan A's unfunded vested benefits determined as of the Plan Year ended December 31, 1979; and

(iii) the unamortized amount of the reallocated unfunded vested benefits as determined under paragraph (4) of ERISA Section 4211(b).

(b) Under Prior Plan B, in the event the actuary determined that as of December 31 of any year the unfunded present value of vested benefits for withdrawal liability purposes was zero, then the following became zero:

(i) the unamortized amount of the change in Prior Plan B's unfunded vested benefits for all prior years,

(ii) the unamortized amount of Prior Plan B's unfunded vested benefits determined as of the Plan Year ended December 31, 1979, and

(iii) the unamortized amount of the reallocated unfunded vested benefits as determined under Paragraph (4) of ERISA Section 4211(b).

(c) In the event of a complete or partial withdrawal on or after January 1, 1988, from merged Prior Plan A and Prior Plan C, the proration fractions used to determine an Employer's withdrawal liability and its share of the liability and reallocation pools under ERISA Section 4211(b) were allocated using Employer contribution histories as if the Plans always had been merged.

(d) In the event of a complete or partial withdrawal during the period January 1, 1985 to December 31, 1987, from the merged Prior Plan A and Prior Plan C, those Employers which had been obligated to contribute to Prior Plan A and those Employers which had been obligated to contribute to Prior Plan C had their respective withdrawal liabilities calculated on the following basis:

(i) That portion of the withdrawal liability which was attributable to liability pools for plan years ending in 1979 through and including 1982 continued to be determined pursuant to Section 4211(b) of ERISA as if he Plans had remained separate;

(ii) That portion of the withdrawal liability which was attributable to annual liability pools for plan years commencing on or after January 1, 1983, was determined on the basis of the annual changes on and after January 1, 1983 in the unfunded vested benefits of the merged Plan; and

(iii) For Employers which withdrew prior to January 1, 1988, the proration fractions used to determine an Employer's withdrawal liability was calculated on the following basis:

(1) The liability pool established as of December 31, 1979, under ERISA Section 4211(b)(3) was allocated using Employer contribution histories as if the Plan had remained separate;

(2) The liability and reallocation pools established as of December 31, 1980 through and including December 31, 1982 under ERISA Section 4211(b)(2), and Section 4211(b)(4), respectively, was allocated using Employer contribution histories as if the Plans had remained separate; and

(3) The liability and reallocation pools established on and after December 31, 1983 under ERISA Section 4211(b)(2) and Section 4211(b)(4), respectively, were allocated using Employer contribution histories as if the Plans always had been merged.

(iv) Notwithstanding the foregoing, if withdrawal occurred in the first plan year beginning after the merger of Prior Plan A and Prior Plan C, the determination of withdrawal liability under ERISa Section 4211 was made as if each of he Plans had remained separate plans.

(v) The short fiscal year of Benefit Plan C commencing April 1, 1982, and ending December 31, 1982, was annualized for purposes of the computation of withdrawal liability by multiplying the Employer's contribution base units by one and one-third (1-1/3) for purposes of measuring the "three-year testing period" in §4205(b)(1)(B) of ERISA.

*Section 7.* The withdrawal liability provisions of a Plan shall not be applicable to an Employer which first became a Contributing Employer after July 1, 1981 and which withdraws from the Plan within five (5) years of its Contribution Date as provided in §4210(a) of ERISA; provided that:

(a) The contributions required of the Employer constitute less than two percent (2%) of the sum of all Employer contributions for each Plan Year during such five (5) year period;

(b) The Employer has never avoided withdrawal liability because of the application of this *Section* with respect to the Plan;

(c) The Plan continues to provide that the cancellation of Past Service Credit under Article IX of the Plan as

11

authorized by §411(a)(3)(E) of the Internal Revenue Code of 1954 applies with respect to the employees of the withdrawing Employer; and

(d) The ratio of the assets of the Plan for the Plan Year preceding the first Plan Year in which the Employer was required to contribute to the Plan to benefit payments made during that Plan Year was at least 8 to 1.

(e) This Section was applicable to new Contributing Employers to Prior Plan A for its C Benefits with a Contribution Date of December 23, 1983 or later.

(f) This Section shall not be applicable to a Contributing Employer which purchases assets from a terminating Contributing Employer and enters into an agreement contemplated by Section 4204 of ERISA.

*Section 8.* In the case of an Employer which has an obligation to contribute under a Plan for work performed in the building and construction industry, and if substantially all the employees who with respect to whom the Employer has an obligation to contribute under the Plan perform work in the building and construction industry, a complete withdrawal from the Plan shall occur only if the Employer ceases to have an obligation to contribute under the Plan, *and* the Employer (A) continues to perform work in the jurisdiction of the Collective Bargaining Agreement of the type for which contributions were previously required, or (B) resumes such work within five (5) years after the date on which the obligation to contribute under the Plan ceases *and* does not renew the obligation at the time of the resumption, as provided in §4203(b) of ERISA.

*Section 9.* A complete or partial withdrawal by an Employer shall take place if the participation of the Employer is terminated by the Trustees for failure to make contributions at the time and in the manner prescribed by the Trustees or under their rules and procedures as adopted under Article I, Section 1.

*Section 10.* This Article VII shall not apply to any defined contribution plan established by the Trustees under Article VI.

## ARTICLE VIII
## MEETINGS AND DECISIONS OF TRUSTEES

*Section 1.* OFFICERS OF TRUSTEES. The Union Trustees shall elect a Chairman and the Employer Trustees shall elect a Chairman, and the two Chairmen shall collectively be known as the Co-Chairmen of the Trustees. The terms of such officers shall commence on the date of their election and continue to the end of the calendar year and thereafter until their successors have been duly elected.

*Section 2.* MEETINGS OF TRUSTEES. Meetings of the Trustees shall be called by the Co-Chairmen or by a majority of the Trustees. Notice of the time and place of each meeting shall be mailed to the Trustees at least ten (10) days in advance. Meetings may be held at any time without notice if all Trustees consent thereto in writing. The Trustees shall meet at least once each year and at such other times as they deem it necessary to transact their business.

*Section 3.* ACTION BY TRUSTEES WITHOUT MEETING. Action by the Trustees may also be taken by them in writing without a meeting; provided, however, that in such cases there shall be unanimous written concurrence by all of the Trustees.

*Section 4.* QUORUM. In all meetings of the Trustees, two Trustees shall constitute a quorum for the transaction of business provided that there is at least one Employer Trustee and one Union Trustee present at the meeting and at all meetings the Employer Trustees and Union Trustees shall have equal voting strength. The vote of any absent Trustee shall be case by the Trustees present, designated by the same party, with the same force and effect as if such absent Trustee were present.

*Section 5.* MAJORITY VOTE OF TRUSTEES. All action by the Trustees shall be by majority decision of the Employer and Union Trustees. Such majority vote shall govern not only this Article but any portion of this Restated Trust Agreement which refers to action by the Trustees. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of a quorum at two consecutive meetings, the matter may then be submitted to arbitration as hereinafter provided.

*Section 6.* MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of all minutes shall be sent to all Trustees. Minutes of a meeting will be reviewed and approved by the Trustees at a subsequent meeting.

## ARTICLE IX
## IMPARTIAL ARBITRATOR

*Section 1.* APPLICATION OF THIS ARTICLE. Either the Employer or the Union Trustees may apply to the american ARbitration Association in the area in which the Fund maintains its principal office for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provision of Article VIII, Section 5. In the event of a failure of the Employer and Union Trustees to agree within a reasonable length of time upon an

arbitrator to decide such dispute, an arbitrator shall. on petition of either Trustee group, be appointed by the district court of the United States for the district where the Fund has its principal office. The decisions of the arbitrator shall be final and binding.

Section 2. EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, and including attorneys' fees incurred by the Trustees in connection with the dispute, shall be proper charges against the Fund and the Trustees are authorized to pay such changes.

Section 3. STATUS OF ARBITRATOR. An impartial arbitrator hereunder will be a fiduciary to the extent provided by ERISA.

## ARTICLE X
## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

Section 1. COUNTERPARTS. This Restated Trust Agreement may be executed in any number of counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

Section 2. WRITTEN INSTRUMENTS.

(a) Each Employer shall adopt and become a party to this Restated Trust Agreement either by executing a counterpart hereof or by otherwise agreeing to be bound hereunder. By adopting this Restated Trust Agreement, the Employer agrees to participate in the Fund, agrees to be bound by this Restated Trust Agreement, agrees to be bound by any Standard Contract Language adopted by the Trustees, irrevocably designates as its representative on the Board of Trustees the persons serving from time to time as Employer Trustees, and agrees to be bound by the action of the Trustees pursuant to this Restated Trust Agreement.

(b) Each Local or District Lodge shall adopt and become a party to this Restate Trust Agreement either by executing a counterpart hereof or by otherwise agreeing to be bound hereunder. By adopting this Restate Trust Agreement, the Local or District Lodge agrees to have the Employees in the bargaining unit it represents participate in the Fund, agrees to be bound by this Restated Trust Agreement, agrees to be bound by any standard contract language adopted by the Trustees, irrevocably designates as its representatives on the Board of Trustees the persons serving from time to time as Union Trustees, and agrees to be bound by the actions of the Trustees pursuant to this Restate Trust Agreement.

(c) Standard Contract Language is specified language which the Trustees may require each Contributing Employer to agree to either as part of the Collective Bargaining Agreement or as part of a separate agreement. No oral or written modification of the Standard Contract Language shall be binding on the Trustees. Provisions in a Collective Bargaining Agreement or other agreement which are contrary to the terms of this Trust or the Standard Contract Language are void and shall not be binding on the Trustees. No grievance procedure, settlement, or arbitration decision under a Collective Bargaining Agreement shall be binding on the Trustees.

(d) The continued submission of contributions to the Fund by an Employer constitutes acceptance of the terms of this Restated Trust Agreement and of the Standard Contract Language despite any provisions in a Collective Bargaining Agreement to the contrary. However, the Trustees have the discretion to terminate the participation of any Employer for failure to execute or renew the Collective Bargaining Agreement, Standard Contract Language, or any other document required by the Trustees.

## ARTICLE XI
## AMENDMENT TO RESTATED AGREEMENT AND DECLARATION OF TRUST

Section 1. AMENDMENT BY TRUSTEES. This Restated Trust Agreement may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees and annexed hereto. As to any amendment, the Trustees is their discretion shall have full power to fix the effective date thereof. Any amendment may have retroactive effect if it is so determined by the Trustees. Notice of the proposed amendment shall be given at the time the notice of meeting is given, unless waived by the Trustees.

Section 2. LIMITATION OF RIGHT TO AMENDMENT. No amendment may be adopted which will alter the basic principles of this Restated Trust Agreement, be in conflict with the Collective Bargaining Agreements with the International Union or Local and District Lodges, as such Agreements affect contributions to the fund created hereunder (except to the extend permitted under Article V, Section 4), be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.

Section 3. NOTIFICATION OF AMENDMENT. Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall execute any instrument or instruments necessary in connection therewith.

13

# ARTICLE XII
# TERMINATION OF TRUST FUND

*Section 1.* BY THE TRUSTEES. This Trust Fund may be terminated by an instrument in writing, executed by all of the Trustees, after the happening of any one or more of the following events:

(a) If, in the opinion of the Trustees, the Trust Fund is inadequate to carry out the intent and purposes of this Restated Trust Agreement, or is inadequate to meet the payments due or to become due under this Agreement and the Plan of Pension Benefits to Employees and beneficiaries;

(b) If there are no individuals living who could qualify as Employees or beneficiaries hereunder;

(c) When there is no longer in force and effect a Collective Bargaining Agreement between any Employer and any Local or District Lodge of the I.A.M. itself, requiring contributions to the Fund.

*Section 2.* PROCEDURE ON TERMINATION. In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall:

(a) Make provision out of the Trust Fund for the payment of expenses incurred up to the date of termination of the Trust and the expenses incidental to such termination;

(b) Arrange for a final audit and report of their transactions and accounts for the purposes of termination of their Trusteeship;

(c) Give any notice and prepare and file any reports which may be required by law;

(d) Apply the Pension Trust Fund in accordance with the provisions of the Plan of Pension Benefits; and

(e) Apply any remaining surplus in such manner as will, in their opinion, best effectuate the purpose of the Pension Trust Fund.

No part of the corpus of income of the Pension Trust Fund shall be used for or diverted to purposes other than for the exclusive benefit of the Employees and their beneficiaries, or the administrative expenses of the Pension Trust Fund. Under no circumstances shall any portion of the Pension Trust Fund, either directly or indirectly, revert or accrue to the benefit of any Contributing Employer or the I.A.M. or any of its Local and District Lodges.

*Section 3.* NOTIFICATION OF TERMINATION. Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local and District Lodge of the International Association of Machinists and Aerospace Workers, the I.A.M.; and each Employer; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

# ARTICLE XIII
# MISCELLANEOUS PROVISIONS

*Section 1.* TERMINATION OF INDIVIDUAL EMPLOYERS. An Employer shall cease to be an Employer within the meaning of this Restated Trust Agreement when it is no longer obligated, pursuant to a Collective Bargaining Agreement with Local or District Lodges of the International Association of Machinists and Aerospace Workers, or the I.A.M., or by any other agreement to make contributions to this Pension Fund, or, as determined by the Trustees, when it is delinquent in its contributions or reports to the Pension Fund or under their rules and procedures as adopted under Article I, Section 1.

*Section 2.* VESTED RIGHTS. No employee or any person claiming by or through such employee, including his family, dependents, beneficiary and/or legal representative, shall have any right, title, or interest in or to the Fund or any property of the Fund or any part thereof except as may be specifically determined by the Trustees.

*Section 3.* SUBMISSION TO TRUSTEES. If any person shall have a dispute with the Trustees about the eligibility, type, amount, or duration of benefits under the Plan, the dispute shall be resolved by the Trustees under and pursuant to the Trust and Plan and their decision shall be final and binding upon all parties. All questions and controversies of whatsoever character, arising in any manner or between any parties or persons in connection with the Plan or Trust, shall be submitted to the Trustees and the decision of the Trustees shall be binding upon al parties dealing with the Plan and Trust.

In connection with any claim or controversy, the Trustees are entitled to the extend permitted by ERISA to rely on any facts that appear in the records of the Trust Fund and documents on file with them. The Trustees may, in their sole discretion, compromise or settle any claim or controversy in the manner that they determine to be in the best interest of the Fund; and any decision made by the Trustees to compromise or settle a claim or controversy or any compromise or settlement agreement will be final and binding on all parties. If a question or dispute arises about the proper person or persons to whom a payment is to be made under the Plan or this Trust, the Trustees may withhold the payment until there is a satisfactory adjudication of the

14

question or dispute which is satisfactory to the Trustees in their sole judgment or until the Trustees have been fully protected against loss by an indemnification agreement or bond which the Trustees in their sole judgment determine is adequate.

*Section 4.* ENCUMBRANCE OF BENEFITS. No monies, property, or equity, of any nature whatsoever, in the Fund, or policies or benefits or monies payable therefrom, shall be subject in any manner by and Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void.

*Section 5.* SITUS. The City of Washington, District of Columbia, shall be deemed the situs of the Trust Fund created hereunder. All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of the District of Columbia to the extent not preempted by the laws of the United States.

*Section 6.* CONSTRUCTION OF TERMS. Wherever any words are used in this Trust Agreement in the masculine gender they shall be construed as though they were also in the feminine or neuter gender in all situations where they would so apply, and wherever any words are used in the Trust Agreement in the singular form they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Trust Agreement in the plural form they shall be construed as though they were also used in the singular form in all situations where they would so apply.

*Section 7.* CERTIFICATION OF TRUSTEES' ACTIONS. The Co-Chairmen of the Trustees, or any other Union Trustee and Employer Trustee designated by the Trustees, may be authorized to jointly execute any certificate or document on behalf of the Trustees, and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Trust Fund or with the Trustees shall be fully protected in reliance placed on such duly executed certificate or document.

*Section 8.* SEVERABILITY. Should any provision in this Restate Trust Agreement or in the Plan or rules and regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provision herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan (or Plans), and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

*Section 9.* REFUND OF CONTRIBUTIONS. In no event will any Employer, directly, or indirectly, receive any refund of contributions made by it to the Fund unless permitted under ERISA and under rules and procedures established by the Trustees. Under no circumstances will any part of the Trust Fund revert to inure to the benefit of any Employer either directly or indirectly.

The undersigned duly constituted Trustees of the I.A.M. National Pension Fund have adopted and executed this Restated Trust Agreement as evidence of their acceptance of the Trust hereby continued and their agreement to be bound thereby this 23rd day of October 1996.

UNION TRUSTEES                              EMPLOYER TRUSTEES

15